The next case is Smart Options v. Jump Rope, 2013-11-16. Mr. Baker. Thank you, Your Honor. May it please this panel and please the court. I'd like to begin this morning by talking about the trial court's error in discovery in the case. As this court noted in Bank Corp., and this can be found in some brief discussion in our brief on pages 23 and 24, the prevailing rule in all circuits is that parties must be afforded adequate time for discovery. Why do you need discovery? The claim recites options and other limitations and isn't it clear that the defendant's system doesn't involve an option? Indeed, it was not clear whatsoever, Judge, and we presented the declaration of Ryan Gartner, who both showed through fact and lay opinion that indeed they were selling options. He was, quote, familiar with the jump rope system. He was a very quick study, not only of options, but also of patents. He reviewed the entirety of Mr. Braxton, the founder of Jump Rope's declaration, looking at every piece of evidence that was presented by Jump Rope. But the claim says wherein the electronic option does not obligate the purchaser to actually purchase the desired services, and with respect to the defendant's system, isn't the purchase already there? Well, that certainly is what Mr. Fleming and And that's precisely what Mr. Gartner said. And as you look at the record of Fresh, DeNovo, you will see that Mr. Gartner was clearly someone who should have known precisely what the Jump Rope system offered with that particular feature because of two things. One, he was indeed, he had devoted his entire life to precisely this type of management, line management, restaurant management, club management. And, as he states, he had personal and intimate knowledge of the Jump Rope system. Is that because he used it? That is because they were trying to sell it to him. Is it because he used it? I don't know whether or not he used it. I will defer to you. It's not in the declaration, right? If it is not in the declaration, then he did not use it. On your issue about discovery, my recollection is that there was a motion to stay discovery? That is correct, Your Honor. That was granted? That is also correct. And that you didn't oppose that? Sadly, we... You didn't appear at the hearing? I did appear. I actually notified counsel that I was running late. And for whatever reason, the trial court did not wait. So you appeared late? That is accurate. So you didn't appear. And you didn't oppose? Well... You didn't oppose, right? I think I'd have to concede that right now, Judge Cleveland. But what I would say is... I just wanted to sort of get clear of what the circumstances were. And I was under the impression that on the Rule 56-1 issue, the judge ruled against you in a very adverse way, and in essence, struck your attempt to put disputed issues of fact into the record. I'm reading from page 4 of the district court's opinion on the merits issue at A4. And the court deems Judge Jumprope's statements of fact as admitted for purposes of the motion. That means to me that the judge said Jumprope's statements of fact are admitted by your party. That is precise. And I see that. And I didn't see you appealing the ruling on the 56-1 issue. And your adversary points that out. It may matter. At the end of their brief, saying, well, you didn't appeal that. And then there was a further argument that you had waived any arguments against your adversary's non-infringement contentions, that you had waived any response to them. And I didn't see any mention in your blue brief of an appeal from the waiver ruling. It may have been. I can tell you where I stand. Understood. I think you're in a very deep hole, because you have an adverse ruling on your evidentiary argument, which relates to your discovery issue. And you have an adverse ruling on your contentions that the judge erred in its non-infringement holding. And you didn't appeal those two issues. So how do you climb out of that hole, at least what I perceive to be a hole? Well, Judge Clevenger, I would say two things. One, it may not have been artfully written. But we do believe that we appealed both of those issues. We put before the court— Where in your blue brief do I find Rule 56-1 even mentioned? And where do I see the word waiver discussed? I mean, help me out, because I'd like to think that you had, in essence, some standing to argue to it. I mean, maybe you can find it on rebuttal. I don't want to hold up your time from your argument. As we stated—not a problem, Judge. It's a pretty important point, obviously. On page 17 of the blue brief, we state at the top, starting at approximately line 2, Although the lower court complained that Smart Options was not in compliance with the local rules, Smart Options complied with Local Rule 56.1 by pointing out specific facts and admissible evidence that showed that genuine issues remained regarding Jump Rope's infringement of the 539 patent. But in the 56.1 ruling, this is your view that you're contesting the judge's ruling on the issue, right? It is, Your Honor. And in our view, this is not a case where we were asking Judge St. Eve to be an archaeologist. Quite the contrary. We supplied a concise two-and-a-half or three-page declaration. We cited to it specifically in response to the statement of facts under the Local Rule 56.1 rules. And our view was that she clearly erred by totally discarding that fact and lay opinion testimony. Do you want to address the sanction? Absolutely, Your Honor. In our view, there's no question that an adequate pre-filing investigation was done. This case is infinitely closer to QPharma than any of the other two cases, VIEW Engineering or, I don't know if it's Juden or Judan. In both VIEW Engineering and Juden, there was only reliance on hearsay and a client's belief. In QPharma, there was reliance on affirmative statements from the defendant, the alleged infringer. The court said your failure to purchase a jump is problematic. That you could have downloaded the free application, you purchased it. You didn't take the simple, inexpensive investigative step before filing the complaint. The court had a litany of reasons why sanctions were justified. And I think the judge was looking at it from the view of what happened well after filing. We don't know because there was no discovery at what point there was a change in the terms of use. You resided to withdraw the complaint? Right, but we stood by the fact that the terms of use published by Jump Rope conceded to have been published by Jump Rope. There are unequivocal statements in those terms of use that are in all capital letters clearly showing Judge Shen that there was a two-step process. Where was the concession? Can you point to that? Is that in the record? It is not a clear, we concede that. That's why I just asked you. Very fair, Judge. That's a clear concession. I would submit to the panel that they should specifically ask that question of Jump Rope because we don't see anywhere in the record that they have ever denied that the terms of use were published by Jump Rope on the internet, which I doubt. Smart options rely on those clear statements. The same thing, those terms of use, isn't that what the judge was talking about in footnote 3 of her opinion? If you look at footnote 3, the smart options claims that Jump Rope doesn't allow or asserting that the purchaser must pay an additional cover fee once he jumps to the front of the line? Correct. That's the same issue, isn't it, that what you claim is in the previous terms of use? Yes, and I believe that if you look at those terms of use, there's unequivocal... Right, but that just means that that information was in front of the judge coming out of, and then she dismisses that, right? Incorrectly, she does indeed do so. And in our view, she abused her discretion by doing so. She's asking that this panel and this court add... But that goes back to her evidentiary ruling, her ruling on Rule 56.1. You're saying you've offered no evidence to support the claim that he must pay an additional entrance fee. You made the assertion you might not have put the terms of use in front of her at that stage in the game, because as I understand it, the terms of use, the actual terms, previous terms of use, didn't show up until the Rule 11 proceedings. That is correct, because we relied on the live... Right, but the same information, you were making the allegation, the same information that underlies your contention on the... ...was in front of the judge on the merits ruling. Front Note 3 tells me that, doesn't it? It would, for the Rule 11. And she rejected it. She's in essence turning back to her Rule 56.1 ruling and saying, you didn't play by the rules. I don't see how this... I mean, her ruling on the 56.1 motion was, you all didn't play by the rules in putting up proper contentions of what would have been material issues and facts. And that's why she said, I'm going to take all of your adversary's statements of fact as true. I don't believe that there's a linkage. I could be wrong, Judge Clevenger, but I don't believe there's a linkage between the terms of use and the local Rule 56.1. The terms of use are only applying because... It has to do with what the facts are, what your assertion of the facts are. We're not asserting that the terms of use were before the lower court at summary judgment. I'm saying the same information, the same argument that you're making based on the terms of use obviously was in front of her. Otherwise, footnote 3 doesn't make any sense. I don't believe that that's necessarily accurate, Judge. And to answer Judge Chen's question, the answer is because we had a live witness who had actually been sold or attempted to have been sold on the product for the specific use, the specific feature. And at two of the three clubs, he specifically knew and so stated that he had personal and intimate knowledge that they did require the second... Is that talking about Mr. Gartner again? That is accurate. Okay, but Mr. Gartner's familiarity with the Jump Rope app, as far as I could see from reading his declaration, is reduced to hearing from two unidentified Jump Rope representatives that you still have to pay a cover charge when you use Jump Rope's app. That is in large part correct, based on his experience of many, many years in the business. But please understand, Jump Rope is not IBM. Jump Rope was three people. Jump Rope was a startup. There's no question that the people who were selling him the app... As I understand it, your infringement theory is that using Jump Rope is a two-step process. First, you pay what you refer to as an auction, which permits you to jump to the front of the line. But then once you get to the front of the line, then there's the second step, which is you have to pay the cover charge separately. Is that your basic theory? It's not just our theory, Judge Chen. It's precisely what the terms of use state. Now, has anybody, either you or anyone on your team, actually tried to use the Jump Rope app to see how it works? Yes, and now it has changed, and Jump Rope has admitted that it changed. When did someone on your team actually buy something using the Jump Rope app? I don't know the first part. Because I didn't see that anywhere. It is not in the record, because what we found is there had been this dramatic shift. We would concede that today, and we have conceded to Jump Rope, today the Jump Rope one-touch system, if you will, does not infringe. We're not attempting to say that. What we're trying to figure out is how long did it infringe? Is it still a system that can be enabled to infringe tomorrow if this court rules against smart actions? We haven't had any discovery whatsoever. How come? Well, that's because you didn't show up for the motion to say the discovery. With due respect, I did show up.  And by the way, our local rules, Local Rule 78.4, I believe, wouldn't even require the judge to have a hearing on the motion. She could have simply ruled in my absence regardless. Did you seek some kind of reconsideration from the judge? We did not, but we had more than three weeks, potentially a month beforehand, we had already issued the discovery, and we were denied the discovery. No, but you didn't ask for any reconsideration. I'm not going to deny that, Judge. That is absolutely true. Assume for a moment that the old terms of use were, as you say, were as a two-step process. You pay to jump the line, and then you pay later to get in. You pay whatever the venue charges to get in. Yes, Judge. Where's the option? Well, the option is, the jump is an option fee. Why is it? You buy, you pay money to jump, so to get right in line, right in front of the bouncer to get in. You pay that, and that puts you in front of Clevenger and everybody else who's sitting in line. You paid for a service, which was the jump. You went and stood in line. You paid cash for that. That's a service, not an option. And then the bouncer said, I don't like your looks, or you're not dressed appropriately, you can't come in. So where's the option? It's an option on access. It's an option on what? On access, A, C, C, D, E, S, S. It's not. They're giving you an option on access. No, it was an option to get in front, to get up there. And then they may or may not let you in. Our strong view, particularly based on the terms of use, is unequivocally, it is an option on access because they join with the club in concert to give you that access. Mr. Baker, you wanted to say seven minutes for a bottle. All of your time is expired, but we'll give you two minutes. That's very kind. I appreciate it. Mr. Fleming? Good morning. May it please the Court. I want to start, before I get into what he was talking about, to talk about the new argument made in the reply brief that Smart Options says it was proceeding under Rule 56D. That's the first time that argument has been made to any court, including the district court. It was made in the reply brief. Quick answer to it. Number one, they did not ask the district courts to stop summary judgment rulings. Rather, they opposed the motion for summary judgment. The best he has is some footnotes saying that I didn't get the discovery that I was promised because it was stayed, and he doesn't ask the district courts to stop. I point the Court to the TMJ case cited in Smart Options' brief, which says if you decide to oppose the motion for summary judgment, then you can't complain about an abuse of discretion. Now, as you pointed out, he didn't show up during the time of the hearing, at least. Afterwards, he didn't file a motion for reconsideration. He didn't file a motion to lift the stay. And when it came time to respond to our motion for summary judgment, he didn't say, I need facts essential, the words in the rule, to oppose the motion for summary judgment. He did exactly the opposite. He filed an opposition. Now, let me jump into the motion for summary judgment itself. There are at least three independent bases that would allow you to sustain it. I view one and three as related. Well, before you get there, what's going on with the two competing versions of the terms of use? The two competing versions of the terms of use are confused before this Court because of the way it was briefed. There is the terms of use that was actually in use for the jump rope application, which is at 130 to 134 of the record. And if you look at them, it looks like a professional terms of use. It says terms of use. Smart Options admitted in response to our fact statement on summary judgment that those were our terms of use. And he disagrees with this. I understand that they ended up submitting the competing version during the Rule 11 sanction briefing. Okay. I want to know where that came from and was that ever the terms of use that was published by Jump Rope? The answer is not in the record. I know it. I just want to know the answer. Okay. Jump Rope started about November of 2011 and when they first started putting up their website, this document was online, but it was a draft placeholder. It wasn't their actual terms of use. You can actually see it. It looks like it's off someone's word processor and the logo is nothing. This was never used for the application. The terms of use that went in use for the Jump Rope application when they were just setting up things, this was not part of the application. When they finally got the application up and running... You're telling us this in response to Judge Chen's desire to know the truth. This is not in the record. This is not in the record. Okay. Mr. Baker claims he downloaded... I want to hear it and you can tell him. That's why we didn't talk about it. I'm not allowed to. But I want to point out something very interesting about this terms of use that supposedly formed the basis for his pre-filing investigation. If you look at the two documents, the one that we say is the terms of use which they admitted, the response agreed that the terms of service so state, Braxton Declaration 14, this is page 733 of the record, and that cites to Exhibit E which is left off of the table of contents over our objections, but it's there. Look at their infringement contentions that they gave us. Those are at pages... There's one copy at 695 to 700 in the record. And if Mr. Baker relied on this other terms of use sheet before filing the case, why do their infringement contentions cite the terms of use that we put into the record at 130 to 34 and were the terms on summary judgment? And if he disputes that, look at the language and the font. Compare their infringement contentions which were after he filed his case to those two terms of use sheets. They are quoting from our terms of use sheet at 130 to 34,  at 1126 in the record. The font's different and the language is different. They cut and paste the language from the actual terms of use and put it into their contentions. So it's puzzling that he claims to have relied on this terms of use sheet that he later filed and apparently sat on for a year when his initial infringement contentions cite ours. This is another puzzling thing about what the district court found to be a very troubling affidavit defending the pre-filing investigation. When you buy a junk, do you always get automatic entry into the venue? That's what Junk Broke promises. Yes, they give you automatic entry. Are there any alternate versions? No. In other words, no options? No option. No options. I thought your adversary said that. No, that's not true. In distinguishing between the old terms of use and the new terms of use. The other sheet that he's now claiming was the terms of use was never the terms of use. It was a draft placeholder put online. It was never the terms of use for the smartphone application. Ever. There's only one version. Maybe I misunderstood. I thought I heard him say that with regard to the terms of use that are currently being used, that he's not arguing that it's a two-step transaction. He's asserting. I thought he said that. He's basically hanging his hat on what I'll call the previous terms of use. He's asserting. If he could get in trial, he would bring in someone who would say, I went to the website and I used it. I made two payments. I paid for the jumping and then when I got to the door, I had to pay to get in and I think the pay for jumping was an option. He'd like to be able to say that and he'll hang his hat on infringement on that event, not on an event that might happen today or tomorrow in using your website the way it is. Well, it's not true. He just asserted. That terms of use was a document put on a website for a startup company that had just started loading its stuff up on the internet. They were just getting started. It was never in use for the jump rope application. He just asserted that. There's no evidence in the record. That would be your response to his infringement. That's my response. You would say, if you were in trial, you'd say, well, your Honor, it's a great theory, but it never happened. Right. And if he had introduced that terms of use sheet that he supposedly relied on before filing a case before summary judgment, he might have made that argument to the district court, but he didn't. He held that terms of use sheet back and then introduced it in defense to our rule of motion. What's footnote 3 all about then? Tell me which of the two orders you're talking about. Well, if you look at the judge's merits ruling, which is the first of the three, and in footnote 3, she's talking about this two-step transaction theory that I believe is the same theory that the so-called original terms of use creates. This is the footnote reading smart options also? Footnote 3 is at page A7. A7. Yeah.  My fault. Yeah. You ought to have this memorized, sir. Yes. It's a memorandum of opinion of orders. Yes, I'm looking at it. And look at footnote 3. Right. She's not referring to the second terms of use sheet here. Well, what she said, she said smart options claims, okay, you don't get immediate access. The purchaser must pay an additional cover fee once he jumps to the front of the line. Now, what's the difference between that and maybe I'm missing something and his two-step theory? Sure. Maybe I'm misunderstanding, and I apologize for that, but she's not referring to the second terms of use sheet at this point. I understand she's not referring to that. She's saying smart options was making an argument that there was a two-step, two-payment transaction. Yes. Isn't that what the first sentence says in footnote 3? Yes. Okay. And isn't the argument that your adversary's mounting on what I'll call the original terms of use, isn't that a two-step transaction argument? The original terms of use... The ones that you're trying to avoid. Yeah, exactly. Let's stop messing around. I mean, it's, you know, in the brief. Yes, I'm not... I'm just asking, isn't that argument that he's making on the original terms of use a two-step transaction argument? He's making that argument on the original terms of use. And I'm trying to say, isn't that the argument that the district court judge understood to be in front of her on the summary judgment motion? The first sentence of footnote 3. Yes. They were making this argument all along. They just weren't citing that terms of use sheet at that point in the record. Well, thank you. That's the point I've been trying to make. So she heard that argument and she rejected it. Yes. And why did she reject that argument? There was no evidence in the record that, first of all, she disregarded the only piece of evidence that was before her at that point, which is the Ryan Gardner Declaration. And the Ryan Gardner Declaration says that once he was told by two representatives of Junk Row that if you pay the junk price, that does not include the cover charge at the nightclub. Which is the same thing that that's what the paragraph on footnote 3 is talking about. Yes. Right. And she disregarded Gardner's Declaration because she found it wasn't based on personal knowledge, which it wasn't. He even says in the first paragraph, personal knowledge, experience, and training. And then he doesn't go on. When you look at the end of the Declaration, he says, based on my experience, training, et cetera, I believe it doesn't include two steps. That is their argument. But this goes to one of the points about the Summary Judgment Motion, which is they don't have in the record anywhere either an argument or a piece of evidence that when you buy the junk, you are provided a contractual right to buy or sell anything. That would be the cover charge. But that is the judge's understanding of their argument at that point. I hope I'm understanding. I think it's an option for entry. They're saying when you purchase the junk, your NFS is buying an option to enter. And whether or not you'll be able to enter is in the hands of the owner of the establishment to frustrate your ability to get in. So it's like an option where you pay for something and then elect not to proceed yourself. It's a funny option because the control over the option is in the hands of the owner of the establishment as opposed to the purchases of the option. Yes, yes. Let me tell you, that's exactly how we thought their case was positioned originally. The person who gets to the front of the line is in no different position than anybody else in line except he's closer. And he doesn't have a contractual right. There's no option like the DVD player example in the spec. That's no different than me going to the grocery store and buying groceries and not picking them up at the end of the conveyor belt. I haven't purchased the groceries under this definition. I have optioned them. All he's saying under his declaration is you get closer to the front of the line, but he doesn't say, and the definition of option is undisputed. In fact, Mr. Baker himself in a brief filed I think it was a year before this case in the ticket reserve case said that the applicant told the examiner the definition of option was the exact one that we proposed and that the judge adopted, undisputed. Let me make another point about the summary judgment motion and the order granting summary judgment. It's important to understand that the district court, we argued three claim terms were there, were missing, and in response smart options said our argument is premised solely on two claim terms which weren't the same claim terms. So the district court found that they'd waived their right to respond to our argument and that was of course not addressed in their briefs before this court. But one could cobble together something that looks like an answer to our argument, but one cannot find anywhere either in the declaration of Ryan Gardner or in the argument itself the answer to that contractual right point about option, the definition, a contractual right to buy or sell something. They don't have an answer to that. Let me ask a question if I may on the sanctions issue. Other than the failure of your adversary to have spent the money to go to your website and play the game to figure out how it works, what other rationale did the district court use for holding your adversary a sanction? The district court also found that my adversary either did not construe or used a frivolous construction of the term option and provided no explanation of the construction of the other two terms we raised. The construction of option... Wasn't there an agreement that they would abide by an interpretation by a companion judge in another case? Yes, Mr. Baker's client, he wanted to import claim constructions from the ticket reserve case in which the other judge had construed option fee and electronic option, but both of those constructions included the word option. She didn't further construe option. She didn't further construe option. So there needed to be a separate construction of option. What I was looking at is if you look at page 10 of the sanctions decision, which is at page 25 in the record, the district court says, they're talking here about Mr. Gartner's declaration. It seems unlikely that smart options would have relied on this declarant who lacked personal knowledge if it had conducted an investigation. Doesn't that seem a breach to you? I mean, the point of view from your adversary on the sanctions issue is, you know, you can't fault us for having not paid the money to use your website. We had a reliable person who has familiarity with how these things work. He's a bouncer, somebody in a nightclub, and he's somebody we think we can rely on. I mean, how can the district court judge discount Gartner as she did there? The district court can discount Gartner because there's no other evidence in the record that the application was actually used. And their case is all about the use of the application. He doesn't say it in his declaration. We know from the records that it wasn't used. I confirmed with my client last night, very few people used this before this patent infringement lawsuit made it very difficult for them to continue in business. And he doesn't provide any other evidence of use. I don't think it's much of a breach at all. If you are defending against a challenge that you've not conducted a pre-filing investigation, there's a free application you can download, and that free application costs tens of dollars, as the district court put to use. You would go to a nightclub and buy your way in and have a drink. It's the least burdensome investigation that I've ever heard of in a patent infringement case. There's also a big element of her decision, the fact that the burden was really on them to do a more thorough investigation after you submitted to them your draft Rule 11 sanction motion. They filed their complaint in April of 2012, then you submitted to them in May of 2012 a draft Rule 11 sanction motion that, with the evidence about, I don't know, the Google Play ad, the iTunes ad, that all make it, I don't know, painfully clear that once you buy the junk, you're in the door and you're on with your night. Yes, I agree. That's another point that's strongly in favor of the district court's sanctions order. Once that Rule 11 letter was sent, I believe May 22nd, that was a red flag. That counsel should have looked more carefully. Even if he hadn't done a construction of the option, he should have done it then. Even if he hadn't downloaded the app, he should have done it then. And, nonetheless, they continued this case. And here we are. Thank you, Mr. Fleming. Your time has expired and we will now jump back to Mr. Baker for a couple of minutes. Thank you, Judge. I want to start with that exact point that Judge Chen brought up and I want to state quite emphatically not only did we have the terms of use and the trademark application and significant corroborative evidence tending to show that there was indeed a two-step process, I personally, and this is in the affidavit that I submitted, I believe it's A975 of paragraph 16, I personally spoke to Mr. Peter Braxton, the CEO and founder of Jumbrill, who confirmed to me, yes, the terms of use that Mr. Fleming is now running from were indeed descriptive of the features. There's no question in my mind that we had an adequate basis to file. Which declaration are we talking about? I believe it's my declaration in response to the Rule 11 sanctions motion. And Mr. Fleming just stood here in front of you and told you, based on his statements, the terms of use... The question is, why wasn't that supposed evidence in front of the judge on the summary judgment? Because we had the live witness judge, we had Ryan Gartner, and he would... Well, I mean, it's... I don't disagree. It's your killer. You're absolutely... It's your dagger to stab in the back of your adversary, and you withheld it on the summary judgment. And sometimes, including in the initial infringement contentions, as he points out, because they were indeed initial. You know... When I come back, it would strike me as a harmless error to have admitted it because it's clear from footnote three that the judge understood what that argument was. I think you may be mistaken there, Judge, because in footnote three, while she may be saying that, she later says unequivocally that what is determinative of infringement is indeed the two-step process. There is no question about that. Even Jump Rope would conceive that because Jump Rope... And she rejected the two-step argument in footnote three because nothing was in front of her beyond Gardner that she dismissed because the terms of use that you had in your hip pocket that she waited to pull out on the Rule 11 motion wasn't in front of her. And, Judge, as you look at the record afresh, we would encourage you strongly to look at Mr. Gardner and because there are factual issues here. Thank you, Mr. Baker. We will take the case under advisement. Thank you, Judge.